KENNETH EUGENE BARRON
30255-037
Federal Medical Center Devens
Post Office Box 879
Ayer, MA 01432-0879

<u>Pro Se Plaintiff</u>



## UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH EUGENE BARRON, )<br><br>    Pro Se Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA )<br>on behalf of the )<br>FEDERAL MEDICAL CENTER DEVENS, )<br><br>    Defendants. )<br>————————————————) | CIVIL ACTION **04-40023** *RCL*<br>2004-CV-_____<br><br>Judge _____ |

## <u>PRO SE PLAINTIFF COMPLAINT</u>

RECEIPT # _404318_
AMOUNT $_5000_
SUMMONS ISSUED _✓_
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____ ✓
BY DPTY. CLK._____
DATE_2.12.04_

Kenneth Eugene Barron, Pro Se Plaintiff, hereinafter ("Plaintiff") for the complaint alleges on personal knowledge to his own acts and otherwise upon information and belief as follows:

## INTRODUCTION TO THE ACTION
## AND THE PARTIES

1.    The Pro Se Plaintiff is a federal inmate held in detention at the Federal Medical Center ("F.M.C.") Devens at Ayer, Massachusetts, since January 24, 2003.  The allegations and documented evidence that is set forth below demonstrates the Plaintiff's irreparable harm that was caused by the defendants failing to act under two Federal Bureau of Prisons ("B.O.P.") medical policies. The Plaintiff was placed on hemodialysis by the defendants on or about August 7, 1997.  The Plaintiff will show below how the defendants failed to act under the Federal Bureau of Prisons two medical policies that deprived the Plaintiff of the medically appropriate and adequate kidney transplantation.

2.    The Federal Medical Center Devens is part of the Federal Bureau of Prisons wherein the United States of America is named on behalf of the Federal Medical Center Devens, hereinafter ("defendants").  The defendants are required to act daily with the Plaintiff under two prison medical policies.  The first medical policy requires the defendants must provide the Plaintiff with the community standard of care.  The second prison medical policy is the organ transplantation policy number 6000.05, Chpater VI, dated February 11, 2000, and attached hereto in Exhibit 1.  The allegations set forth below demonstrate the defendants' failure

- 1 -

in following the above two medical policies. The defendants failed to follow Exhibit 1, the organ transplant policy, after their medical experts documented the Plaintiff medically needed his kidney transplant. The Plaintiff suffers daily irreparable harm by the defendants' failure to act under the Federal Bureau of Prisons' organ transplantation policy in Exhibit 1 attached hereto. The Plaintiff has a release date from detention on or about November 2011.

JURISDICTION

3.    This court has jurisdiction over the subject matter of the action pursuant to Title 28 U.S.C. §1331, a federal question with 28 U.S.C. §§2201 and 2202. The defendants conceded to the filing of the instant action based on the Plaintiff's exhaustion of the B.O.P. remedies under the Federal Tort Claims Act. The B.O.P. Northeast Regional Counsel, Henry J. Sadowski, conceded to the filing of the instant action under the Plaintiff's federal tort claims exhaustion in the B.O.P. Tort Claim number TRT NER 2003 03 866. The Plaintiff did file further B.O.P. exhaustion of reme- dies with the F.M.C. Devens Warden, thereafter with the B.O.P. Northeast Region and thereafter with the B.O.P. Main Office in Washington, D.C. The Plaintiff did comply with each element of the Prison Litigation Reform Act, 42 U.S.C. §1997(e)(A) and Booth v. Churner, 149 L.Ed. 2d 958 (2001) by the complete exhaustion of all B.O.P. remedies regarding the allegations set forth below.

QUESTIONS OF CONSTITUTIONAL VIOLATIONS

UNDER DELIBERATE INDIFFERENCE

4.    The Court may rule in the instant action that the F.M.C

Devens Medical Director, Dr. S. Howard, M.D. ("Dr. Howard"), did
act under Constitutional violations pursuant to Bivens v. Six Un-
known Named Agents of the Federal Bureau of Narcotics, 430 U.S.
388 (1971).  The Plaintiff sets forth allegations below that may
be used by the Court in ruling the F.M.C. Devens Medical Director
Dr. Howard did violate the cruel and unusual punishment clause of
the Eighth Amendment by failing to provide the Plaintiff with ade-
quate medical treatment.  Estelle v. Gamble, 429 U.S. 97 (1976).
Should the court rule under the constitutional Bivens violations,
the Plaintiff should be allowed to amend and or supplement the
action naming the F.M.C. Devens Medical Director Dr. Howard in her
official and individual capacities.  Dr. Howard is not a named de-
fendant at the time the instant action is filed, however, Dr.
Howard in her official B.O.P. position is in charge of all the
Plaintiff's medical treatment at F.M.C. Devens.  Dr. Howard was in
charge of all the Plaintiff's medical care since January 24, 2003,
when the Plaintiff was transferred to F.M.C. Devens.

5.   The allegations set forth below against the defendants show
the named prison officials failing to follow the above two B.O.P.
medical policies.  The allegations are based on the prison offi-
cials negligence, malpractice, in violation of the two B.O.P. me-
dical policies.  The Plaintiff claims the defendants are liable
under the Federal Tort Claims Act for damages caused in the viola-
tion of the two B.O.P. medical policies.

## VENUE

6.   This Court holds venue over the defendants based on F.M.C.

- 3 -

Devens' location in the Court's judicial district.  The allegations below took place at F.M.C. Devens wherein the Federal Tort Claims Act mandates the filing of the instant action in this court.  Each claim of misconduct against the defendants that is set forth below took place at F.M.C. Devens.

<u>FACTUAL ALLEGATIONS SHOWING THE DEFENDANTS IRRREPARABLE HARM TO THE PLAINTIFF BY THE DEFENDANTS FAILING TO FOLLOW TWO B.O.P. MEDICAL POLICIES</u>

7.   The defendants concede in their evidence documents that their B.O.P. medical policy demands that they provide the Plaintiff with the community standard of care.  The defendants' B.O.P. medical policy under the community standard of care demands that kidney transplant is standard care.

8.   The defendants concede in <u>Exhibit 2</u> attached hereto, the January 7, 2000, Washington University School of Medicine, Barnes Jewish Hospital, medical document issued by Associate Professor of Surgery, Dr. Todd K. Howard, M.D., that the Plaintiff is a reasonable candidate for renal transplantation.  However, since January 7, 2000, the defendants failed to follow the B.O.P. organ transplant policy 6000.05 by preventing the medically adequate kidney transplant.

9.   The defendants failed to follow <u>Exhibit 2</u> attached hereto, their medical experts' opinion, to provide the Plaintiff with the medically needed adequate treatment of a kidney transplant from January 2000 through 2004.  The Plaintiff claims the defendants

- 4 -

understood the substantial risk of serious harm they caused the
Plaintiff from January 2000 through 2004 by failing to provide the
Plaintiff with the medically needed adequate community standard
of care kidney transplant.

## THE DEFENDANTS ACTED IN A MATERIAL BREACH OF THE B.O.P. ORGAN TRANSPLANTATION POLICY BY FAILING TO PROVIDE THE PLAINTIFF WITH THE REQUIRED KIDNEY TRANSPLANT

10.  On February 11, 2000, the B.O.P. issued their organ transplan-
tation policy, number 6000.05, chapter VI, that sets forth the
following:

**Section 21.  Organ Transplantation**

The Bureau will consider organ transplantation as a treatment
option for inmates in accordance with the following procedures:

a.    When the Clinical Director at an institution determines it
is medically necessary to evaluate an inmate's suitability for an
organ transplant, he or she will initiate an organ transplant
laboratory/specialist consultant work-up at the institution.

* Once a specialist determines that an inmate may be a
  potential candidate for organ transplantation, and the
  Clinical Director recommends that further evaluation is
  medically appropriate, the inmate will be evaluated at
  an appropriate facility such as a transplant center in
  the vicinity of the institution or a Bureau Medical
  Referral Center.

b.    If an organ transplant center considers an inmate suitable
for a transplant, the institution Clinical Director will then
refer all pertinent medical/surgical/psychiatric documentation to
the Medical Director for consideration.

c.    If the Medical Director determines that organ
transplantation is medically indicated, the inmate will be
referred to an appropriate transplant center in accordance with
Bureau Policy, transplant center regulations, and state and
federal laws.

* Prior ro **any** transplant center referral, the Medical
  Director **must first obtain the concurrence of the**

- 5 -

**Assistant Director, Correctional Programs Division,** to ensure that all security issues or correctional interests regarding referral of the inmate have been satisfied.

d.   The Bureau will pay medical care and hospitalization costs associated with organ donors.

*   These expenses are limited to those costs directly related to the transplant procedure itself and does not include follow-up care associated with complications.

<u>THE DEFENDANTS MEDICAL RECORDS CONCEDE</u>

<u>THEY VIOLATED THE B.O.P. ORGAN TRANSPLANT POLICY</u>

11.  On August 11, 2003, Dr. Howard, the Medical Director at F.M.C Devens, issued <u>Exhibit 3</u>, attached hereto.  The <u>Exhibit 3</u> defendants' document sets forth it is a medical record consultation sheet on the first line of the medical document, <u>Exhibit 3</u>.  The defendants concede in the reason for request area of the medical document that the Plaintiff is requesting a kidney transplant. The defendants concede in the area of the medical document under reason for request that they must evaluate and make recommendations regarding the Plaintiff's request for kidney transplant.

12.  The F.M.C. Devens medical director, Dr. Howard, signed her name under the heading saying approved on <u>Exhibit 3</u>.  The Plaintiff claims the defendants failed to act under the B.O.P. organ transplant policy from year 2000 through 2004 by preventing the Plaintiff's medically needed adequate treatment kidney transplant. The Plaintiff claims the defendants transferred the Plaintiff to F.M.C. Devens on January 24, 2003, for a kidney transplant, that was denied.

13.   The Plaintiff claims the defendants denied, deprived and de-
layed the community standard of medically needed adequate treat-
ment kidney transplant from year 2000 through 2004, knowing the
misconduct violated the two B.O.P. medical polices.   The Plaintiff
claims the defendants violated the B.O.P. required communicty stan-
dard of care by withholding the kidney transplant.   The Plaintiff
claims the defendants denied, deprived and delayed the B.O.P.
medical community standard of care kidney transplant from year
2000 through 2004 causing irreparable harm to the Plaintiff.   The
Plaintiff claims the defendants acted in a material breach of the
B.O.P. organ transplantation policy from year 2000 through 2004.
The defendants concede in the Plaintiff's exhaustion of prison
remedies that he was denied the kidney transplant from year 2000
through 2004.

THE DEFENDANTS VIOLATED THE B.O.P. ORGAN TRANSPLANT POLICY
BY FAILING TO ACT WITH THE PLAINTIFF's DOCUMENTED KIDNEY DONORS

14.   The Plaintiff claims the defendants by Dr. Howard and her
medical staff made demands for the names of the Plaintiff's kidney
donors.   The Plaintiff claims that he provided three family members
to the defendants in year 2000 and on or about December 2003 to
provide the kidney donation.

15.   The Plaintiff claims the defendants violated and breached
the B.O.P. organ transplantation policy by failing to act with
the Plaintiff's named kidney donors from year 2000 through 2004.

16.   The Plaintiff claims the defendants by Dr. Howard and her

- 7 -

medical staff failed to follow the intent of the B.O.P. organ
transplantation policy in <u>Exhibit 1</u> attached hereto regarding the
Plaintiff's kidney donors.  The B.O.P. organ transplantation policy
in <u>Exhibit 1</u> sets forth the intent to act with the Plaintiff's
kidney donors in the following policy section:

> Policy 6000.05, chapter VI, Section 21. Organ Transplantation,
> subsection (d):

> (d) The Bureau will pay medical care and hospitalization
> costs associated with organ donors.
> These expenses are limited to those costs directly related
> to the transplant procedure itself and does not include
> follow-up care associated with complications.

17.  The Plaintiff claims the defendants never requested any kidney
donor information from the Plaintiff's family members from year
2000 through 2004 in violation of the B.O.P. organ transplantation
policy.


<u>THE PLAINTIFF CLAIMS THE DEFENDANTS FAILED TO ACT</u>

<u>WITH THE REQUIRED ORGAN SHARING KIDNEY DONOR LIST</u>

<u>TO EXCHANGE THE KIDNEY PROVIDED BY THE PLAINTIFF's FAMILY MEMBERS</u>

<u>TO GAIN THE MATCHED KIDNEY FOR THE PLAINTIFF</u>


18.  The Plaintiff claims the defendants violated the B.O.P. organ
transplantation policy protocol regarding kidney donors.  The Plain-
tiff claims the defendants failed to request the organ donor
sharing list to list the Plaintiff in order to exchange his family
members kidneys that did not match the Plaintiff's medical require-
ments.

19.  The Plaintiff claims the defendants understand they are re-

quired under the B.O.P. Organ Transplantation policy to have the organ sharing donor list act with the Plaintiff's kidney donors. The defendants violated the B.O.P. organ transplantation policy by failing to place the Plaintiff's kidney donors with the organ sharing donor list.  The defendants understand they prevented the Plaintiff's family kidney donors from acting with the required organ donor sharing list in order to exchange their donated kidney for the right matched kidney for the Plaintiff.  The Plaintiff claims the defendants violated the above kidney donor protocol in breach of the B.O.P. Organ Transplantation policy in Exhibit 1.

20.  The Plaintiff claims the defendants never acted in any effort with the required kidney donor protocol in contacting the organ sharing donor list from year 2000 through 2004 regarding the Plaintiff's kidney transplant.

21.  The Plaintiff claims the defendants denied, deprived and de-layed all required communication with the kidney donor organ sharing list to exchange the Plaintiff's family members kidneys from year 2000 through 2004.  The misconduct is a breach of the B.O.P. organ transplantation policy with the required B.O.P. community standard of care that mandates kidney transplantation. The defendants deprived the Plaintiff's right to exchange his family members kidneys with another kidney from the organ sharing donor list if the match in the kidney did not meet the Plaintiff's medical requirements.

THE DEFENDANTS HAVE A LONG HISTORY OF LITIGATION WITH THE
PLAINTIFF OVER THE DENIED KIDNEY ORGAN TRANSPLANT

22.   The Plaintiff claims the defendants caused irreparable harm by the denial of the required kidney transplantation from year 2000 through 2004.   The Plaintiff filed suit against the defendants in Barron v. Keohane, 216 F.3d 692 (8th Cir. 2000) in Exhibit 4, attached hereto.   In the prior Plaintiff's litigation, the allegations claimed the defendants acted with constitutional violations in the denial of the required kidney transplant.   The Court in the prior litigation denied the Plaintiff relief under the defendants' prior B.O.P. Organ Transplantation policy, however, the B.O.P. did change their Organ Transplantation policy after the Plaintiff's prior litigation.   The ruling in the prior litigation addressed the Plaintiff's payment for the kidney transplant that is no longer required under the B.O.P. Organ Transplantation policy.

23.   The Plaintiff claims the defendants have a long history of litigation regarding the required kidney transplant that was denied, deprived and delayed in violation of the two B.O.P. medical policies from year 2000 through 2004.   The Plaintiff claims the defendants B.O.P. policy community standard of care requires the kidney transplant that is the subject of the instant action.

24.   The Plaintiff claims he is suffering daily irreparable harm without the required kidney transplant.   The Plaintiff's kidneys do not function, preventing the removal of all toxins from the Plaintiff's body.

THE PLAINTIFF IS SUFFERING ONGOING IRREPARABLE HARM FROM AUGUST

1997 WHEN HE WAS PLACED ON HEMODIALYSIS BY THE DEFENDANTS

AND DENIED A KIDNEY TRANSPLANT

- 10 -

25.  The Plaintiff claims the defendants are the cause of his daily irreparable harm in the denial of the required kidney transplant.  The Plaintiff's kidney function is dead, preventing the Plaintiff's removal of all toxins from his body.  The Plaintiff claims the prolonged use of hemodialysis by the defendants from 1997 through 2004 violates the B.O.P. medical policy community standard of care.  The community standard of care requires kidney transplantation that was deprived by the defendants under misconduct by Dr. Howard.

26.  The Plaintiff claims the defendants are the cause of daily irreparable harm by proceeding with hemodialysis three days a week from year 1997 through 2004.  The defendants prevent the Plaintiff from the removal of the toxins from his body by the denial of the kidney transplant.  The defendants are causing expanded injury to all the Plaintiff's organs by the denial of the required kidney transplant.

27.  The Plaintiff claims the defendants' denial of the required kidney transplant caused irreparable harm based on the Plaintiff's following injuries:

    a.   Heart murmus lateral ischemia

    b.   Calcium deposits injury to the heart

    c.   Aneurysms in the Plaintiff's arms

    d.   Restless leg syndrome

    e.   Hypertension pulmonary increased risk of heart attack

28.  The defendants' denial of the required kidney transplant is causing irreparable harm to the Plaintiff's nervous system that cannot withstand the prolonged use of hemodialysis from 1997

- 11 -

through 2004. The defendants are causing long term injury to the Plaintiff's body and organs with his nervous system that will deprive the Plaintiff of a normal life.

## THE DEFENDANTS BY DR. HOWARD VIOLATED EACH PART OF THE B.O.P. ORGAN TRANSPLANTATION POLICY CAUSING IRREPARABLE HARM TO THE PLAINTIFF

29. The defendants by Dr. Howard, the F.M.C. Devens Medical Director, approved the Plaintiff's organ transplant evaluation on August 11, 2003, in Exhibit 3 attached hereto. Thereafter, the defendants by Dr. Howard and her staff failed to follow the required protocol under the B.O.P. organ transplantation policy set forth above and attached hereto in Exhibit 1.

30. The defendants by Dr. Howard failed to follow the B.O.P. organ transplantation policy that sets forth in the first paragraph the following:

> The Bureau will consider organ transplantation as a treatment option for inmates in accordance with the following procedures:

31. The B.O.P. Organ Transplantation policy in the second paragraph, letter (a), that is set forth below, demonstrates the defendant's violation of the policy. The policy required Dr. Howard and her staff to perform the following organ transplant evaluation:

> a. When the Clinical Director at an institution determines it is medically necessary to evaluate an inmate's suitability for an organ transplant, he or she will initiate an organ transplant laboratory/specialist consultant work-up at the institution.

32.   The defendants by Dr. Howard and her medical staff have de-
layed and denied the above medical process needed to provide the
Plaintiff's organ transplant evaluation.   The misconduct is a breach
and violation of the B.O.P. medical policy that requires the commu-
nity standard of care that demands the Plaintiff must be provided
with the kidney transplant.   The misconduct is a further breach
and violation of the B.O.P. organ transplant policy protocol.

33.   The defendants by Dr. Howard and her medical staff have de-
layed and denied the Plaintiff's required kidney transplant evalu-
ation under the second paragraph of paragraph (a) in the B.O.P.
Organ Transplantation policy that sets forth the following:

> Once a specialist determines that an inmate may be a
> potential candidate for an organ transplantation, and the
> Clinical Director recommends that further evaluation is
> medically appropriate, the inmate will be evaluated at
> an appropriate facility such as a transplant center in
> the vicinity of the institution or a Bureau Medical
> Referral Center.

34.   The defendants by Dr. Howard is the F.M.C. Devens Medical
Clinical Director under the above B.O.P. organ transplantation po-
licy protocol.   On January 7, 2000, Todd K. Howard, M.D., associate
professor of Surgery at Washington University School of Medicine,
Barnes Jewish Hospital, set forth the Plaintiff is a reasonable
candidate for renal transplantation in Exhibit 2 attached hereto.

35.   The defendants failed to follow the B.O.P. Organ transplan-
tation policy protocol after the associate professor of surgery
Todd K. Howard, M.D., set forth the Plaintiff was a reasonable
candidate for renal transplantation on January 7, 2000 in
Exhibit 2 attached hereto.

36.   The defendants by Dr. Howard and her medical staff breached and violated part (b) of the B.O.P. Organ Transplantation policy protocol that sets forth the following:

> b. If an organ transplant center considers an inmate suitable for a transplant, the institution Clinical Director will then refer all pertinent medical/surgical/psychiatric documentation to the Medical Director for consideration.

37.   The defendants by Dr. Howard and her medical staff denied and delayed the required B.O.P. organ transplantation policy protocol in paragraph (b) above causing irreparable harm to the Plaintiff.

38.   The defendants by Dr. Howard and her medical staff failed to follow paragraph (c) of the B.O.P. organ transplantation policy that required the following be done with the B.O.P. medical director regarding the Plaintiff's kidney transplant protocol:

> c. If the Medical Director determines that organ transplantation is medically indicated, the inmate will be referred to an appropriate transplant center in accordance with Bureau Policy, transplant center regulations, and state and federal laws.

39.   The defendants by Dr. Howard and her medical staff have delayed and denied the above B.O.P. Organ Transplantation policy protocol from proceeding.   The defendants were required under the B.O.P. community standard medical policy to act with the Plaintiff's kidney transplant evaluation.   Dr. Howard and her medical staff on behalf of the defendants have delayed and denied each part of the required Plaintiff's B.O.P. organ transplantation evaluation medical protocol.

40.   The defendants by Dr. Howard and her medical staff have failed to follow the required B.O.P. organ transplantation policy

protocol that sets forth:

> Prior to **any** transplant center referral, the Medical
> Director **must first obtain the concurrence of the Assis-
> tant Director, Correctional Programs Division,** to ensure
> that all security issues or correctional interest regar-
> ding referral of the inmate have been satisfied.

41.  The defendants by Dr. Howard and her medical staff have de-

layed and denied the B.O.P. assistant director of the Correctional

Programs Division from the reviewing of all of the security issues

or correctional interest regarding the referral of the Plaintiff's

kidney transplant policy protocol.  Dr. Howard and her medical staff

have delayed and denied the B.O.P. medical director's participation

under the above B.O.P. organ transplantation policy protocol re-

garding the required conduct of the B.O.P. Assistant Director of

the Correctional Programs Division.

42.  The defendants by Dr. Francis Zambeiit, M.D., on August 11,

2003, in Exhibit 3 attached hereto, conceded the Plaintiff should

have the B.O.P. Organ Transplantation policy evaluation protocol.

Dr. Zambetti is the defendants' expert kidney donor medical offi-

cial.  Dr. Howard and her medical staff denied and delayed the

Dr. Zambetti consultation instructions to proceed with the Plain-

tiff's kidney transplant evaluation in breach and violation of

the B.O.P. Organ Transplantation policy protocol.

THE DEFENDANTS BY DR. HOWARD AND HER MEDICAL STAFF
BREACHED AND VIOLATED THE B.O.P. ORGAN TRANSPLANTATION POLICY
PROTOCOL THAT REQUIRES INTERACTION
WITH THE PLAINTIFF's KIDNEY DONORS

44.   The defendants by the Dr. Howard's medical staff Ms. Connie Godjikan, filed the January 31, 2003, medical record in <u>Exhibit 5</u> attached hereto.   The medical record concedes the Plaintiff provided his family members to become the kidney donors under the B.O.P. organ transplantation policy protocol.

45.   The defendants by Dr. Howard and her medical staff failed to follow the B.O.P. organ transplantation policy protocol regarding the Plaintiff's family members that are kidney donors.   The B.O.P. organ transplantation policy sets forth the following protocol regarding the Plaintiff's family members who seek to be kidney donors:

>   (d) The Bureau will pay medical care and hospitalization
>       costs associated with organ donors.

46.   The defendants by Dr. Howard and her medical staff breached and violated the B.O.P. organ transplantation policy kidney donor protocol from January 31, 2002, through 2004, by failing to act with the Plaintiff's family members who seek to be kidney donors.

47.   The defendants by Dr. Howard and her medical staff, that includes Ms. Connie Godjikan, denied and delayed the Plaintiff's right to provide family members to act as his kidney donors from January 31, 2003, through 2004.   <u>Exhibit 5</u> attached hereto demonstrates the violations of the B.O.P. organ transplantation policy kidney donor protocol.


<u>THE WASHINGTON POST NEWSPAPER IS COVERING THE DEFENDANTS'</u>

<u>VIOLATIONS OF THE B.O.P. ORGAN TRANSPLANTATION POLICY</u>

- 16 -

48. The Washington Post Newspaper assigned their staff writer Susan Okie to investigate and write about the defendants' pattern of violations of the B.O.P. organ transplantation policy. In Exhibit 6 attached hereto, the Washington Post published their story explaining the defendants' failure to follow the B.O.P. Organ Transplantation policy. The Washington Post staff writer Susan Okie published claims setting forth the defendants B.O.P. are continuing to act as a bad H.M.O.

49. The defendants by Dr. Howard and her medical staff are acting to deny and delay the Plaintiff's kidney transplant under a false color of law that violates their scope of employment. The Plaintiff is suffering daily irreparable harm based on being deprived the community standard of care that requires kidney transplantation.

THE DEFENDANTS RESPONSE IN THE PLAINTIFF's B.O.P. EXHAUSTION OF REMEDIES SHOWS THE INTENT TO PROVIDE THE KIDNEY TRANSPLANT, HOWEVER THE MISCONDUCT DENIED AND DELAYED THE KIDNEY TRANSPLANT PROTOCOL FROM YEAR 2000 THROUGH 2004, CAUSING IRREPARABLE HARM TO THE PLAINTIFF ONGOING

50. The defendants filed a fabricated deceptive response in each of the Plaintiff's B.O.P. exhaustion of remedies filed with the F.M.C. Devens Warden and the B.O.P. Northeast Regional Director and B.O.P. Main Office in Washington, D.C. at the office of the B.O.P. General Counsel.

51. The defendants filed fabricated and deceptive papers in their response to each of the Plaintiff's B.O.P. administrative remedies

in order to delay and deny the required kidney transplant evalu-
ation protocol from year 2000 through 2004. The defendants are
acting under a false color of law in violation of scope of em-
ployment in each of the responses set forth below.

52. On September 18, 2003, the F.M.C. Devens Warden David L.
Winn issues Exhibit 7 attached hereto, his B.O.P. response. The
Warden Winn response in the first paragraph sets forth the follo-
wing:

> This is in response to your request for administrative
> remedy in which you request a compassionate release
> due to denial of your request for a kidney transplant.

53. In the second paragraph of the Warden Winn response, he pro-
vides the following conceded medical elements of the B.O.P. organ
transplantation policy protocol that must be performed of the
Plaintiff by the defendants:

> An investigation of your request revealed the following:
> You were evaluated by the nephrologist on August 13, 2003,
> who recommended that a Hepatitis C work-up be completed
> prior to kidney transplant. Following the Hepatitis C
> work-up, you will be evaluated by a team consisting of
> social workers, psychologist, and medical staff. Once
> this evaluation is completed, it will be forwarded to the
> Medical Director of the Bureau of Prisons in the Central
> Office for a determination as to whether or not your re-
> quest for an organ transplant is approved or denied.
> Further, the medical director would also provide any
> recommendation as to whether or not a compassionate re-
> lease should be considered or not.

54. The defendants by Warden Winn have acted with misconduct by
failing to follow the B.O.P. organ transplantation policy protocol
under the above B.O.P. administrative remedy response. The defen-
dants never performed the above organ transplantation policy pro-
tocol evaluation. The B.O.P. above response was filed under the
intent to delay and deny the Plaintiff's right to the organ trans-

plant policy evaluation protocol.

55.  The defendants used each response under the Plaintiff's B.O.P. exhaustion of remedies to deny and delay the Plaintiff's organ transplant policy evaluation protocol.  The defendants failed to follow each element of the organ transplantation policy protocol preventing the Plaintiff's kidney transplant evaluation.

<u>ON JANUARY 13, 2004, THE DEFENDANTS CONCEDED</u>
<u>THE PLAINTIFF SHOULD FILE THE INSTANT ACTION</u>
<u>UNDER THE FEDERAL TORT CLAIMS ACT EXHAUSTION</u>
<u>OF B.O.P. REMEDIES THAT WERE COMPLETED</u>

56.  On January 13, 2004, the defendants by Henry J. Sadowski, the B.O.P. Northeast regional counsel conceded the Plaintiff should file the instant action.  Mr. Sadowski issued his denial of the Plaintiff's Federal Tort Claims exhaustion of remedies under the B.O.P. Tort Claim number TRT NER 2003 03866.  The Mr. Sadowski Tort Claim denial conceded the Plaintiff had the right to file the instant action against the defendants under the following issues of injury:

    a.    The defendants denied the Plaintiff's kidney transplant;

    b.    The Plaintiff is provided kidney dialysis without the benefit of the required B.O.P. medical policy standard of community care that requires a kidney transplant;

    c.    The defendants conceded the Plaintiff is examined each month by a contract nephrologist kidney doctor;

    d.    The defendants conceded the last B.O.P. nephrologist visit was on August 13, 2003;

e. The defendants conceded the nephrologist had to deter-
mine whether the Plaintiff will become a candidate for
kidney transplant.

57. The defendants' January 13, 2004, B.O.P. denial of the Plain-
tiff's exhaustion of remedies under the Federal Tort Claims Act is
attached hereto under Exhibit 8.

## THE DEFENDANTS' DENIAL OF THE PLAINTIFF's FEDERAL TORT CLAIMS EXHAUSTION OF REMEDIES DEMONSTRATES THE PLAINTIFF's IRREPARABLE HARM SHOWING THE DEFENDANTS' VIOLATIONS OF THE TWO B.O.P. MEDICAL POLICIES IN THE DENIAL AND DELAYING OF THE PLAINTIFF'S KIDNEY TRANSPLANT

58. In Exhibit 8 attached hereto, the defendants' federal tort
claims act denial by Mr. Sadowski, we see Prima Facie evidence
of the defendants failing to follow the B.O.P. organ transplantation
policy. The defendants' grounds for the federal tort claims denial
are in direct conflict with the evidence in the defendants' medi-
cal records in Exhibits 2 and 3 attached hereto.

59. The defendants' denial of the Plaintiff's federal tort claims
exhaustion demonstrates the failure to follow the B.O.P. transplant
policy. The defendants set forth the Plaintiff was not approved
for the required kidney transplant when Exhibit 2 attached hereto
shows the Plaintiff should proceed with the kidney transplant
protocol in year 2000 based on the defendants' medical doctor
expert.

60.   The defendants fabricated the wrongful federal tort claims denial with deceptive facts regarding the Plaintiff's liver biopsy. The defendants' expert doctor nephrologist, Francis Zambetti, M.D., conceded to the Plaintiff in the 2003 visit that the issue of checking the Hepatitis C level would not stop or prevent the kidney transplant protocol.   The defendants' fabricated the delay of the Plaintiff's kidney transplant protocol under the wrongful reply in the Plaintiff's federal tort claims denial.

61.   The defendants set forth in their denial of the Plaintiff's federal tort claims remedy that the Plaintiff claims the defendants' misconduct in the denial and delayed kidney transplant protocol is the cause of budget constraints.

## THE DEFENDANTS DELAYED AND DENIED THE PLAINTIFF's KIDNEY TRANSPLANTATION PROTOCOL BASED ON BUDGET CONSTRAINTS

62.   The defendants fabricated their denial under the Plaintiff's tort claims act exhaustion regarding the B.O.P. budget constraints, preventing the Plaintiff's kidney transplant protocol.   The Plaintiff was placed in detention at F.M.C. Devens in January 2003. From January 2003 through 2004, the defendants provided no kidney transplant at F.M.C. Devens, based on budget constraints.

63.   The defendants are acting with misconduct by failing to follow the B.O.P. organ transplantation policy protocol with the Plaintiff based on budget constraints, preventing all kidney transplants from January 2003 through 2004.   The defendants are acting under a false color of law in the delay and denial of the Plaintiff's kidney

transplant protocol.  The defendants filed fabricated, deceptive, adverse determinations in each and every response to the Plaintiff's exhaustion of B.O.P. remedies.  The fabricated, adverse determinations were filed by the defendants in the multi-levels of B.O.P. exhaustion of the Plaintiff's remedies that include the Federal Tort Claims denial in exhibit 8 attached hereto.

## WHEREFORE THE PRO SE PLAINTIFF DEMANDS THE FOLLOWING :

1. Judgment for compensatory damages under the completed Plaintiff's exhaustion of remedies pursuant to the federal tort claims act to be proven at trial;

2. Judgment for punitive damages to be proven at trial for constitutional violations;

3. Judgment against the defendants for all costs and fees expended in the action;

4. Appointment of counsel by the court to litigate the complex issues of fact and law;

5. Trial by jury on all issues so triable which the Plaintiff respectfully demands; and

6. Leave to the Court to amend and or supplement the action as the interest of justice requires.

Respectfully submitted,

Dated: February 3, 2004        by _Kenneth E Barron_

KENNETH EUGENE BARRON
Pro Se Plaintiff

- 22 -