LIST OF EXHIBITS

1.  B.O.P. Organ Transplantation Policy

2.  January 7, 2000, letter from Washington University School of Medicine, Barnes Jewish Hospital, signed by Dr. Todd K. Howard, M.D., Associate Professor of Surgery

3.  August 11, 2003, medical record consultation sheet for kidney transplant, approved by Dr. S. Howard, M.D.

4.  Barron v. Keohane, 216 F.3d 697 (8th Cir. 2000)

5.  January 31, 2003, medical record showing family members willing to donate kidney

6.  Washington Post media story

7.  September 18, 2003, Warden Winn response

8.  January 13, 2003, denial under the exhaustion of Federal Tort Claims Act B.O.P. remedies

c. The inmate must sign a statement indicating the desire to donate an organ to a specified relative. The consent must state that the inmate understands the possible dangers of the operation, that the inmate agrees to this of his/her own free will, and that the Government will not be held responsible for any complications or financial responsibilities.

d. When an inmate is appropriately designated as community custody, that inmate may request consideration for a medical furlough, in accordance with furlough policy procedures.

e. The Bureau shall assist in the necessary preliminary medical evaluation to the extent reasonable within its resources.

f. The local institution shall coordinate procedures such as transportation, custody, classification, compatibility determinations, evaluation, hospitalization, furlough status, etc.

g. Inmates are not authorized to donate blood or blood products.

\* Section 21.  Organ Transplantation

The Bureau will consider organ transplantation as a treatment option for inmates in accordance with the following procedures:

a. When the Clinical Director at an institution determines it is medically necessary to evaluate an inmate's suitability for an organ transplant, he or she will initiate an organ transplant laboratory/specialist consultant work-up at the institution.

- Once a specialist determines that an inmate may be a potential candidate for organ transplantation, and the Clinical Director recommends that further evaluation is medically appropriate, the inmate will be evaluated at an appropriate facility such as a transplant center in the vicinity of the institution or a Bureau Medical Referral Center.

b. If an organ transplant center considers an inmate suitable for a transplant, the institution Clinical Director will then refer all pertinent medical/surgical/psychiatric documentation to the Medical Director for consideration.

c. If the Medical Director determines that organ transplantation is medically indicated, the inmate will be referred to an appropriate transplant center in accordance with

```
                                            PS 6000.05
                                            CN-3, 2/11/2000
                                            Chapter VI, Page 22
```

Bureau policy, transplant center regulations, and state and federal laws.

- Prior to any transplant center referral, the Medical Director **must first obtain the concurrence of the Assistant Director, Correctional Programs Division**, to ensure that all security issues or correctional interests regarding referral of the inmate have been satisfied.

   d. The Bureau will pay medical care and hospitalization costs associated with organ donors.

- These expenses are limited to those costs directly related to the transplant procedure itself and does not include follow-up care associated with complications. *

Section 22.   Physical Therapy

A detailed local manual shall be prepared and include, at least: infection control, scheduling of patients, hours of operation, modalities authorized to be performed, staffing, and safety and sanitation.  Special considerations include:

   a. Ground fault interrupters shall be present for all equipment using electrical current that may come in contact with the patient.

   b. Inmates assigned to physical therapy may not administer any therapy without first receiving documented training in that specific modality.

   c. Vacuum breakers shall be present on all hydrotherapy equipment to prevent back siphoning.

Section 23.   Sexual Assault

   a. When an inmate complains of being sexually assaulted, medical staff shall fully document the inmate's complaint, subjective/objective findings, and the institution's response to this complaint.

   b. Institution medical staff are not to compromise medical evidence on the inmate. Inmates who complain of being sexually assaulted are to be transported to a local community facility that is equipped (in accordance with local laws) to evaluate and treat sexual assault victims.

*1 Exhibit*

## Washington University School of Medicine
## Barnes-Jewish Hospital
Todd K. Howard, M.D.
January 7, 2000

BARRON, Kenneth
REG.#: 30255-037

**Referring Physician:** Lance Lauria, MD, Chief of Health Programs, US Department of Justice, US Medical Center for Federal Prisoners, Springfield, MO 65807
Ashock Patel, MD, US Department of Justice, US Medical Center for Federal Prisoners, Springfield, MO 65807

This patient is seen in consultation at the request of the U.S. Medical Center for Federal Prisoners for evaluation of his candidacy for renal transplantation.

**HISTORY:** Mr. Barron is a 36 year old male with a history of membranoproliferative glomerulonephritis. He has been maintained on hemodialysis and also has a history of hypertension associated with his renal failure. He has lost 20 pounds of weight as a result of dialysis. He tolerates dialysis reasonably well.

**PAST MEDICAL HISTORY:** His past medical history is significant for his history of hypertension, hepatitis B and hepatitis C and a splenectomy as a child at age 14. At that time he though he received some transfusion and he attributes his hepatitis to this problem.

**SOCIAL HISTORY:** He denies alcohol or cigarettes. He says he runs five miles a day and has excellent exercise tolerance. He used to work as a brick and stone mason. He is single.

**FAMILY HISTORY:** His father had atherosclerotic vascular disease and hypertension. He had a coronary bypass at age 68. His mother is 62 and alive and well. He has two sisters ages 40 and 34 and a brother age 43 all of whom he identifies as potential donors. He also has a daughter who is six years old.

**MEDICATIONS:** The patient does not know the names of the medicines that he is on.

**REVIEW OF SYSTEMS:** Review of systems is negative for cardiac, respiratory, GI, GU, musculoskeletal, neurologic or endocrine problems except as mentioned above.

**PHYSICAL EXAMINATION:** Physical examination reveals a well developed, well nourished male in no acute distress. HEENT exam: Sclerae are anicteric. Pupils are round and reactive to light. Extraocular movement is intact. His tongue and uvula are in the midline. Palate elevates normally with phonation. Dentition is in satisfactory repair. His neck is supple without adenopathy, thyromegaly or bruits. His lungs are clear to auscultation. Cardiac exam reveals normal S1 and S2 without murmurs, rubs or gallops. He has a regular rhythm and a normal rate. His abdomen is soft and nontender without masses or organomegaly. Genitourinary exam is that of a normal male. Extremities are free of edema. He has good peripheral pulses. Neurologically, he is grossly intact.

EX HIBIT 2

BARRON, Kenneth
Page Two
January 7, 2000

**LABORATORY:** Recent laboratory evaluation includes and electrocardiogram performed 3/23/98, which shows sinus bradycardia otherwise normal. Chest x-ray shows mild cardiomegaly. Renal ultrasound shows a small simple cyst in the upper pole of the left kidney, otherwise consistent with his renal failure. A full laboratory evaluation was performed 12/2/99 included a glucose of 107, BUN 93, creatinine 16.2, uric acid 7.2, sodium 139, potassium 5.1, chloride 96, phosphorous 7.9, calcium 9.8, total
protein 6.8, albumen 3.5. His alkaline phosphatase is 85, SGOT is mildly elevated at 58, LDH 143, total bilirubin 0.7. Cholesterol is 160, triglycerides 130, $CO_2$ is 23. His white blood cell count is 6.3, hemoglobin 10.2 g, hematocrit 29.5%, platelet count is 303,000.

**IMPRESSION:** This is a 36 year old male with end-stage renal disease secondary to membranoproliferative glomerulonephritis. He also has a history of hepatitis B and hepatitis C.

At this evaluation he appears to be a reasonable candidate for renal transplantation. However, he requires a full evaluation of his history of hepatitis B and hepatitis C particularly with a raised AST. Although his bilirubin and albumen are normal, there may be some underlying liver disease or ongoing viral hepatitis, which may impact on his ability to receive transplant and immunosuppressive medication afterwards.

In addition, considering his 11 years in prison and the six years remaining on his sentence, I think it is reasonable for him to undergo a full psychological evaluation to see if he will be able to remain compliant with medical management and the frequent medical contact required to maintain his allograft once he is released from prison. Assuming this is found to be satisfactory he appears to be a reasonable candidate for renal transplantation.

Todd K. Howard, M.D.
Associate Professor of Surgery

TKH/dam

| MEDICAL RECORD | | CONSULTATION SHEET | AUTHORIZED FOR LOCAL REPRODUCTION |
|---|---|---|---|

**REQUEST**

TO: MD Zambetti

FROM: (Requesting physician or activity) SC Smith / Howard

DATE OF REQUEST: 8-11-03

REASON FOR REQUEST (Complaints and findings)

- This individual is requesting a kidney transplant
- Please evaluate / make recommendations

PROVISIONAL DIAGNOSIS

Dialysis — Renal transplant Request Candidate.

DOCTOR'S SIGNATURE [signature]   APPROVED [signature]

PLACE OF CONSULTATION: ☐ BEDSIDE  ☐ ON CALL   ☒ ROUTINE  ☐ TODAY  ☐ 72 HOURS  ☐ EMERGENCY

**CONSULTATION REPORT**

RECORD REVIEWED ☐ YES ☐ NO    PATIENT EXAMINED ☐ YES ☐ NO    TELEMEDICINE ☐ YES ☐ NO

ESRD: peripheral neuritis  6 — 130/90
Abd. Hx □ /4
HS S₁ S₂ [illegible]

→ Doing well. Should continue work-up
for transplant — ? Hep C — viral load
& coordinate trans [illegible] transplant team
→ Close f/u [illegible] renal: q [illegible] 2 wks

(Continue on reverse side)

SIGNATURE AND TITLE [signature]   DATE 8/12/03

HOSPITAL OR MEDICAL FACILITY | RECORDS MAINTAINED AT | DEPARTMENT/SERVICE OF PATIENT

RELATION TO SPONSOR | SPONSOR'S NAME (Last, first, middle) | SPONSOR'S ID NUMBER (SSN or Other)

PATIENT'S IDENTIFICATION | REGISTER NO. | WARD NO.

Barron Ken
36255-037
FMC Devens

CONSULTATION SHEET
Medical Record
STANDARD FORM 513 (REV. 4-98)
Prescribed by GSA/ICMR FPMR (41 CFR) 101-11.203(b)(10)

[signature] 8/15/03

Exhibit 3

Kenneth Eugene BARRON, Appellant,

v.

P.W. KEOHANE, Appellee.

No. 99–2201.

United States Court of Appeals,
Eighth Circuit.

Submitted: April 12, 2000.

Filed: July 5, 2000.

Federal prisoner who suffered from kidney disease petitioned for writ of habeas corpus, alleging that course of treatment in which prison medical staff treated him with dialysis, rather than providing him access to a kidney transplant, violated his constitutional rights. The United States District Court for the Western District of Missouri, Russell G. Clark, J., denied petition. Prisoner appealed. The Court of Appeals, Richard S. Arnold, Circuit Judge, held that medical studies cited by prisoner, which indicated that patients with kidney disease who receive transplants have better survival rates than those who do not receive transplants, were insufficient to show that course of treatment demonstrated deliberate indifference to prisoner's serious medical needs.

Affirmed.

1. Prisons ⚖︎17(2)

Medical studies cited by federal prisoner, which indicated that patients with kidney disease who receive transplants have better survival rates than those who do not receive transplants, were insufficient to show that course of treatment in which prison medical staff treated him for his kidney disease with dialysis, rather than providing him access to a kidney transplant, demonstrated deliberate indifference to prisoner's serious medical needs, in violation of his constitutional rights.

2. Habeas Corpus ⚖︎688

Discovery is available in habeas corpus proceedings at the discretion of the district court.

Nancy R. Graven, Asst. Fed. Public Defender, Springfield, MO, argued (Raymond C. Conrad, Jr., Fed. Public Defender, on the brief), for appellant.

Cynthia Jean Hyde, Asst. U.S. Atty., Springfield, MO, argued (Stephen L. Hill, U.S. Atty., on the brief), for appellee.

Before RICHARD S. ARNOLD, BEAM, and LOKEN, Circuit Judges.

RICHARD S. ARNOLD, Circuit Judge.

Kenneth Barron appeals from the District Court's[1] order dismissing without prejudice his habeas petition claiming deliberate indifference to his serious medical needs.

Barron asserted that the warden of the Medical Center for Federal Prisoners (MCFP) at Springfield, Missouri, has denied him proper medical treatment for his kidney disease because the MCFP medical staff is treating him with kidney dialysis rather than providing him access to a kidney transplant. He stated that this decision is adversely affecting his long-term survival. Barron asked the District Court to order the warden at MCFP to place him on a kidney-transplant waiting list or, in the alternative, to release him from custody to obtain a transplant.

In its dismissal order, the District Court relied particularly on the affidavit of Dr. Frederick Husted, the nephrologist at MCFP, in which Dr. Husted stated that dialysis is an acceptable treatment for Barron's kidney condition (membranoproliferative glomerulonephritis) and that Barron was responding we[ll]. The Court also note[d] ence to a study [that] showed that patient[s with] erulonephritis have a [mor]tality rate on dialysi[s greater than] rate after transplanta[tion]. [Bar]ron cited studies s[howing that patients] with kidney disease [receiving trans]plants have better [survival rates than] those who do not rec[eive transplants.] District Court conclu[ded that] the record "indicate[d that] dialysis" treatment [was appropriate.] The Court concluded [that Barron had not es]tablished deliberate in[difference to his ser]ious kidney disease an[d dismissed the petition] without prejudice.

[1] We agree that [in consider]ing kidney-transplant [studies] fered by Barron are in[sufficient to support] a conclusion that Dr. [Husted's] treatment amounts to [deliberate indiffer]ence to a serious med[ical need. Accord]ingly, we affirm the o[rder dismissing Bar]ron's petition, w[ithout prejudice to his] right to file a new case.

Although we affirm [the] dismissal, we take t[his opportunity to] make several observ[ations. First, less] than six weeks after [the affidavit] relied on by the Distri[ct Court in dismiss]ing Barron's claim, Dr. [Husted authored] a consultation note wh[ich stated that Bar]ron "appear[ed] to be [a candi]date for a transplant c[onsultation," though] that statement does no[t compel a conclu]sion that continuing d[ialysis for his] condition is medically in[appropriate. It sug]gests that a kidney tran[splant may be] appropriate.

[2] Second, as Barr[on has] pointed out, although [Dr. Husted stated] that he had conducted a [study of] mortality rates for glo[merulonephritis pa]tients being treated wi[th dialysis, neither] the government nor Dr. [Husted provided] any supporting docum[entation of that] study. In that regard,

---

1. The Hon. Russell Clark, United States District Judge for the Western District of Missouri.

Exhibit

constitutio[nal]

688

available in habeas co[rpus]
at the discretion of t[he]

---

[Raymo]nd, Asst. Fed. Public D[efender]
[Springfie]ld, MO, argued (Raymon[d]
[C.] Fed. Public Defender, o[n brief for ap]pellant.

[___] Hyde, Asst. U.S. Atty[___]
argued (Stephen L. Hil[l___]
[on] brief, for appellee.

[Before RICHA]RD S. ARNOLD,
[and ___]EN, Circuit Judges.

ARNOLD, Circuit Judge.

[___] appeals from the Dis-
[trict court's o]rder dismissing without
[prejudice his habe]as petition claiming de-
[liberate indifferen]ce to his serious medical
[needs ___]

[___] ed that the warden of the
[Medical Center] for Federal Prisoners
[in Spri]ngfield, Missouri, has de-
[nied him] medical treatment for his
[condition b]ecause the MCFP medical
[staff provides] him with kidney dialysis
[without prov]iding him access to a kid-
[ney transplant.] He stated that this deci-
[sion adversel]y affecting his long-term
[health. Barro]n asked the District Court
[to order the war]den at MCFP to place him
[on the tra]nsplant waiting list or, in
[the alternative,] to release him from custo-
[dy for a tr]ansplant.

[In its fina]l order, the District Court
[relied heavi]ly on the affidavit of Dr.
[Husted] the n[ep]hrologist at
[MCFP in which] Dr. Husted stated that
[dialysis is acc]eptable treatment for Bar-
[ron's con]dition (membranoprolifer-
[ative glomerulo]nephritis) and that Barron

---

## U.S. v. WEAVER
Cite as 216 F.3d 693 (8th Cir. 2000)

was responding well to that treatment. The Court also noted Dr. Husted's reference to a study he conducted which showed that patients suffering from glomerulonephritis have an "unusually low mortality rate on dialysis or a high mortality rate after transplantation." Although Barron cited studies showing that patients with kidney disease who receive transplants have better survival rates than those who do not receive transplants, the District Court concluded that nothing in the record "indicate[d] that continuing dialysis treatment is contraindicated." The Court concluded Barron had not established deliberate indifference to his serious kidney disease and dismissed the case without prejudice.

[1] We agree that the statistics regarding kidney-transplant survival rates proffered by Barron are insufficient to support a conclusion that Dr. Husted's course of treatment amounts to deliberate indifference to a serious medical need. Accordingly, we affirm the order dismissing Barron's petition, without prejudice to his right to file a new case.

Although we affirm the District Court's dismissal, we take this opportunity to make several observations. First, less than six weeks after signing the affidavit relied on by the District Court in dismissing Barron's claim, Dr. Husted also signed a consultation note which stated that Barron "appear[ed] to be an acceptable candidate for a transplant consultation." While that statement does not compel the conclusion that continuing dialysis for Barron's condition is medically inappropriate, it suggests that a kidney transplant may also be appropriate.

[2] Second, as Barron's habeas counsel pointed out, although Dr. Husted stated that he had conducted a study showing low mortality rates for glomerulonephritis patients being treated with dialysis, neither the government nor Dr. Husted provided any supporting docume[ntation] for the study. In that regard, we note that dis-

693

covery is available in habeas proceedings at the discretion of the District Court. See Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Finally, although Barron did not directly challenge the constitutionality of the Bureau of Prisons organ transplant policy, we express our concern regarding that policy. Simply stated, the Bureau of Prisons does not provide organ transplants, and, in the event a prisoner can show he needs a transplant, requires him to demonstrate his ability to pay for the transplant procedure before a furlough for that purpose will be authorized. Given the Bureau's obligation to provide medical care to prisoners, see 18 U.S.C. § 4042, denial of a transplant to an inmate who needs—but cannot pay for—a transplant may raise constitutional concerns.



---

UNITED STATES of America, Plaintiff–Appellee,

v.

Theresa WEAVER, also known as Theresa Fletcher, Defendant–Appellant.

No. 99-2829.

United States Court of Appeals, Eighth Circuit.

Submitted: March 3, 2000;

Filed: July 6, 2000.

Defendant was convicted, pursuant to guilty plea, in the United States District Court for the Western District of Missouri, D. Brook Bartlett, Chief Judge, of conspiring to manufacturer methamphetamine. Defendant appealed her sentence. The

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry) |
| 1/31/03 1505 | S: h (all cont) bursitis vs biceps tendinitis. A - (L) shoulder discomfort CRF, dialysis, Hep B & C. P - (L) shoulder x-rays. Pts Education: Informed to pick up meds at pill line this evening. Has siblings willing to donate kidney - advised to send cop-out to CDC this information. Continue T Salsalate as ordered. F/U when x-ray results back. — Connie Godjiklan, MLP, FMC Devens |
| 02-03-03 1330 | MD Note: Pt seen for HTP - Opthalmology consult requested - pt to f/u c Nephrology for ESRD r/ved issues & pt c/o dyspnea c/o/w/d to D/C Salsalate - √ for T. — F. Bhatti, MD, Medical Officer, FMC Devens |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

PATIENT'S IDENTIFICATION: (For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)

30255-037
PARROW, KENNETH
12-21-1962
DIALY
FMC DEVENS

EXHIBIT 5

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

# Inmates Await Transplant

## Despite Federal Policy Change, Prisoners Say They're Ignored

By Susan Okie
Washington Post Staff Writer

Federal prisoners who suffer from certain diseases, including end-stage kidney failure, are eligible to receive organ transplants at government expense under a new policy, according to federal officials.

But several prisoners with chronic kidney failure said that they have been unsuccessful so far in their efforts to be evaluated for possible transplants under the policy.

The Bureau of Prisons announced earlier this year that it had decided to pay for transplants in some circumstances, modifying its long-standing position of refusing to provide organ transplants for prisoners.

Officials made the decision because, for disorders such as leukemia and end-stage kidney failure, organ transplants have become the treatment of choice and are no longer considered experimental or extraordinary, said Jan Sorenson, assistant national health systems administrator.

"Until the success rate was very high and it really became the community standard, we didn't change our policy," she said.

An inmate with leukemia received a bone marrow transplant at the University of Kentucky Medical Center in Lexington in September, becoming the first federal prisoner to benefit from the policy change.

Hundreds of inmates in federal and state prisons who suffer from kidney failure must be hooked up to dialysis machines for several hours three times a week to remove toxins from their blood. The cost of such treatment is about $40,000 annually per patient. The number of inmates with kidney failure is expected to rise in the future with the aging of the prison population.

Although medical studies have shown that people on long-term dialysis have a much higher death rate than kidney transplant recipients, most prison systems make it difficult or impossible for inmates to obtain transplants. In contrast, outside of prisons, the federal Medicare program covers the cost of treatment, including transplants, for all Americans with end-stage kidney failure.

However, because of a national shortage of organ donors, almost 47,000 Americans are waiting for kidney transplants, according to the United Network for Organ Sharing (UNOS).

A 1998 Washington Post article described the plight of federal prisoners with kidney failure who were ineligible for transplants under the former policy. Three inmates interviewed for that article said, in recent letters to a reporter, that after the policy was changed last February, they requested medical evaluations for possible transplants. However, they said, they have yet to receive them.

"The medical staff here is trying to discourage dialysis patients from receiving kidney transplants, period," wrote Michael Walker, an inmate on dialysis at the Federal Medical Center (FMC) Devens in Ayers, Mass.

David Lee Smith, an inmate at the U.S. Medical Center for Federal Prisoners in Springfield, Mo., said that since March he has twice requested a transplant evaluation from a kidney specialist at the prison but has received no response. Smith said he has a brother whose tissue type is a good match for his own and who is able to donate a kidney.

Sylvester Clay, another FMC Devens inmate, wrote: "I was told by medical staff that everyone would receive an evaluation but it has not happened. At this point, all transplants have been put on hold."

"It sounds as if the Bureau of Prisons is continuing to act as a bad HMO," said Elizabeth Alexander, director of the American Civil Liberties Union's National Prison Project.

The Bureau of Prisons' Sorenson said officials are preparing a contract that will be bid upon by medical centers wishing to provide kidney transplants for federal inmates. The transplant program at UMass Memorial Medical Center in Worcester, about 30 miles from FMC Devens, is one of those being considered.

A total of 168 inmates, housed in three federal prisons, are on dialysis for end-stage kidney failure.

Michael Nelson, the Bureau of Prisons' chief physician, said that three prisoners—one at FMC Devens and two at Springfield—are undergoing medical and psychological evaluations for transplants. (None is among the inmates interviewed by The Post.) He said all three inmates told medical staff at the prisons that they have family members who may be willing to donate kidneys.

However, Sorenson added, prisoners need not have a relative willing to donate an organ in order to be considered for the treatment.

Because of the shortage of organ donors, not all transplant programs are willing to consider placing prisoners on their waiting lists for kidneys, Sorenson said. "We're going to have to see how the transplant centers react to having inmates worked up and put on their candidate lists," she said.

Once a treatment has become standard in the community, prisoners should not be denied it solely because they are incarcerated, according to ethical and legal experts. The U.S. Supreme Court concluded in a 1976 case that state and federal governments have a constitutional obligation to provide health care to prisoners, said Richard J. Bonnie, director of the Institute of Law, Psychiatry and Public Policy at the University of Virginia.

"The court said that it constituted cruel and unusual punishment for a state to fail to provide medical care to inmates under circumstances that would manifest deliberate indifference to serious medical needs," Bonnie said.

However, the ACLU's Alexander said federal and state prisoners cannot sue the government for failing to provide needed care unless they have exhausted all "administrative remedies" within the prison system—a process that can take years. "The problem is, if [prison officials] keep saying they'll get around to it sometime, they can never address it in court," she said. "Then two years goes by and perhaps the prisoner is dead."

Ten state prisoners are on a waiting list for kidney transplants in Virginia, one of the few states whose prison system routinely refers inmates with kidney failure for transplants and pays for the surgery.

"I try to adhere to the standard of care on the outside," said M.J. Vernon Smith, a former transplant surgeon who is chief physician of the Commonwealth of Virginia Department of Corrections. "Our state pays for transplants outside of prisons. I can see no ethical or reasonable reason why I shouldn't do it."

EXHIBIT 6

**FEDERAL MEDICAL CENTER DEVENS, MASSACHUSETTS**
**RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #309685-F1**

This is in response to your Request for Administrative Remedy in which you request a compassionate release due to a denial of your request for a kidney transplant.

An investigation of your request revealed the following: You were evaluated by the Nephrologist on August 13, 2003, who recommended that a Hepatitis C work up be completed prior to kidney transplant. Following the Hepatitis C work up, you will be evaluated by a team consisting of social workers, psychologists, and medical staff. Once this evaluation is completed, it will be forwarded to the Medical Director of the Bureau of Prisons in the Central Office for a determination as to whether or not your request for an organ transplant is approved or denied. Further, the Medical Director would also provide any recommendations as to whether or not a compassionate release should be considered or not.

Based on the foregoing, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at Bureau of Prisons, Northeast Region, U.S. Custom House, 7th floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received in the Northeast Regional Office within 20 days of the date of this response.

_____          9-18-03
David L. Winn, Warden                     Date

Exhibit 7

# Memorandum

UNITED STATES GOVERNMENT

Northeast Regional Office, Philadelphia, PA
FEDERAL BUREAU OF PRISONS

**DATE:** January 13, 2004

**REPLY TO ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Your Administrative Tort Claim, No. TRT-NER-2003-03866

**TO:** Kenneth Eugene Barron, Reg. No. 30255-037
FMC Devens

Your Administrative Tort Claim No. TRT-NER-2003-03866, properly received by this agency on July 31, 2003, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek compensatory damages in the amount of $10,000,000.00 for an alleged personal injury. Specifically, you claim you are being denied placement on the kidney transplant list because of budget constraints at the Federal Medical Center (FMC), Devens, Massachusetts. As a result, you claim you will not live until your 2011 release date.

After careful review of this claim, I have decided not to offer a settlement. Investigation reveals you arrived at FMC Devens for continued kidney dialysis. You have been examined monthly by a contract nephrologist. You were last evaluated by the nephrologist on August 13, 2003, at which time a Hepatitis C work up was recommended, to determine whether you are a candidate for a kidney transplant. This requires a liver biopsy, which is being been scheduled. Your condition is currently stable. Once the Hepatitis C work up is completed, if appropriate, you will be referred to our Central Office for approval of a kidney transplant. The medical record indicates you are receiving appropriate medical treatment, consistent with community standards. You fail to show that negligence on the part of any Bureau of Prisons' employee has resulted in your alleged injury.

Accordingly, your claim is denied. If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum.

cc: David L. Winn, Warden, FMC Devens

Exhibit 8