UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KENNETH EUGENE BARRON,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 04CV40023RCL |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**
**and**
**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' CROSS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c)**

**Introduction**

Plaintiff Kenneth Eugene Barron commenced the instant action on or about February 13, 2004, by filing a complaint against the United States with respect to the Federal Medical Center ("FMC"), Devens, Massachusetts, with the United States District Court for the District of Massachusetts. Plaintiff filed this complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. (see Complaint ¶¶ 3, 5), and then immediately moved for partial summary judgment on largely identical grounds. Specifically, Plaintiff alleges in both his complaint and partial motion for summary judgment that he has been denied a kidney transplant, by the medical staff at FMC Devens, from January 24, 2003, through July 27, 2003.[1] Plaintiff

---

[1] Though Plaintiff's Complaint alleges failure to provide a kidney transplant from January of 2000, through 2004, Plaintiff was only in the care of FMC Devens after January 24, 2003, which Plaintiff admits in his Claim for Damage, Injury, or Death (his FTCA administrative claim), filed July 27, 2003, and attached hereto as **Document C**. Therefore, the applicable time period for allegations made against FMC Devens is January 24, 2003, through July 27, 2003. Regardless, as a result of Plaintiff's failure to file a timely complaint with the court, any claims

contends that the failure to approve a kidney transplant violates Bureau of Prisons ("BOP") policy and the community standard of care. (Id. at ¶ 2.) Plaintiff further claims in his complaint and partial summary judgment motion that the United States violated BOP policy by failing to act with his named kidney donors to date. (Id. at ¶ 15.) As a result, Plaintiff contends that the prolonged use of hemodialysis caused expanded injury to his organs. (Id. at ¶¶ 25-26.) Plaintiff also contends that refusal to approve a kidney transplant has caused the following injuries: heart murmus lateral ischemia; calcium deposits injury to the heart; aneurysms in his arms; restless leg syndrome; and hypertension pulmonary increased risk of heart attack. (Id. at ¶ 27.) Plaintiff requests punitive[2] and compensatory damages. (See Complaint, p. 22.) Plaintiff also requests a jury trial.[3]

Plaintiff lacks evidence sufficient to support his allegations of medical malpractice against the United States in both his complaint and partial summary judgment motion . Plaintiff's medical records indicate that he has been receiving adequate medical care fulfilling the standard of care imposed upon the United States. Additionally, these records indicate that his

---

alleged to have occurred prior to July 27, 2001, would be barred by the applicable two-year statute of limitations. See 28 U.S.C. § 2401(b). Additionally, Plaintiff failed to file an administrative claim with respect to any claims alleged to have occurred while confined at the United States Medical Center for Federal Prisons, Springfield, Missouri ("USMCFP Springfield"). (See Declaration of Gwendolyn Walker, attached hereto as **Document 3**.) Therefore, any claims with dates prior to July 27, 2001, would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

[2] The FTCA prohibits the award of punitive damages. 28 U.S.C. § 2674.

[3] Plaintiff's request for a jury trial is inappropriate in an FTCA action. Any action against the United States under 28 U.S.C. § 1346 shall be tried by the court without a jury. Thus, to the extent Plaintiff attempts to assert a cause of action pursuant to the FTCA, he is not entitled to a jury trial. Accordingly, Plaintiff's request for a jury trial should be denied.

condition has *improved* as a result of the care and treatment he receives. (See Declaration of Sandra L. Howard, M.D., FMC Devens Clinical Director, attached hereto as **Document 2**, ¶ 23.) Plaintiff's condition is not classified as emergent, and a transplant has not been determined medically necessary. (Id.) Furthermore, the BOP organ transplant policy does not require organ transplantation. (Id.) Thus, the United States is not in violation of said policy for failure to approve Plaintiff's request for a kidney transplant. (See Bureau of Prisons Program Statement 6000.05, Health Services Manual, Chapter VI, ¶ 21.) Accordingly, pursuant to Fed. R. Civ. P. 56(c), Plaintiff's motion for partial summary judgment should be denied, and summary judgment should be granted to the United States as a matter of law.

### Statement of Material Facts Pursuant to Local Rule 56.1[4]

In accordance with Local Rule 56.1, the United States herein sets forth a "concise statement of the material facts of record" and contends that there is "no genuine issue to be tried." See L.R. 56.1 (2004).

Plaintiff, Kenneth Eugene Barron, Reg. No. 30255-037, is a federal inmate currently incarcerated at FMC Devens. (See **Document A**, Public Information Data, attached to the Declaration of FMC Devens Attorney Advisor Ann H. Zgrodnik.)[5] Prior to being incarcerated at FMC Devens, he was previously incarcerated at the USMCFP Springfield from August 12, 1997,

---

[4] It is important to note that while the United States sets forth its concise statement of material facts herein, Plaintiff failed to comply with this requirement (see L.R. 56.1) in his partial summary judgment motion, which constitutes grounds for denial of his motion. L.R. 56.1 (2004).

[5] The Zgrodnik Declaration is attached as **Document 1**.

through January 24, 2003.[6] (Id.) On March 24, 1995, Plaintiff was sentenced in the United States District Court for the District of Maryland to a 235-month term of imprisonment, with a five year term of supervised release to follow, for the offense of Illegal Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(1). Assuming he receives all good conduct time available to him under 18 U.S.C. § 3624(b), his projected release date is January 1, 2012. (Id.)

On April 17, 1995, Plaintiff was designated to the Federal Correctional Institution ("FCI") at Schuylkill, Pennsylvania. (See **Document B**.) Upon arrival, a medical intake screening was completed by a mid-level practitioner in which Plaintiff reported no significant medical history. (See **Document 2**, ¶ 5.)[7] On April 26, 1995, Plaintiff underwent routine laboratory tests which were ordered during the medical intake screening on April 17, 1995. (Id.) His laboratory tests revealed the following: 2+ protein in his urine (normal = zero); blood urea nitrogen ("BUN") was 17 (normal = 6 to 25); creatinine was 1.5 (normal = 0.8 to 1.4). (Id.) These findings were suspicious for primary kidney disease. (Id.) On August 14, 1995, Plaintiff was transferred to the Federal Correctional Institution Allenwood, Pennsylvania ("FCI Allenwood"). (See **Document B**.)

On September 26 1995, Plaintiff's urinalysis test was repeated revealing: 3+ protein in his urine; granular casts; and red blood cells were 25 (normal = 0 to 3). (**Document 2**, ¶ 5.) On

---

[6] Plaintiff has been assigned to numerous institutions since his incarceration. For a detailed printout of the institutions Plaintiff has been assigned to since his incarceration, see **Document B**, Inmate History for Kenneth Eugene Barron, Reg. No. 30255-037, attached to the Declaration of Ann H. Zgrodnik.

[7] Upon proper request by the Court or Plaintiff, and in accordance with any applicable rules, regulations, and releases, the United States would be happy to produce the relevant medical records referenced in the sworn declaration of FMC Clinical Director Sandra L. Howard.

November 13, 1995, he was seen by a mid-level practitioner for further evaluation of his continued abnormal protein and blood finding in the urine. (Id.) Further medical history obtained from Plaintiff revealed the following: Plaintiff was infected with Hepatitis at age 14 following a tattoo from a dirty needle; status post splenectomy resulting from motor vehicle accident at age 13 which fractured his ribs and ruptured his spleen; history of IV drug abuse at age 16; history of nephrolithiasis (kidney stones)- 1987/88. (Id.) At the conclusion of the evaluation, further laboratory tests were collected revealing that he previously had Hepatitis B and was positive for Hepatitis C. (Id.) Due to the abnormal laboratory test results and persistent protein in the urine, Plaintiff was referred to an outside Nephrologist. (Id.)

On November 24, 1995, Plaintiff underwent laboratory tests which showed that he had a cholesterol level of 240, triglycerides of 216, a high density lipid ("HDL") of 28, and a low density lipid ("LDL") of 169. (**Document 2,** ¶ 6.) All of the values were abnormal indicating a pre-history of elevated lipids prior to his incarceration with the BOP. (Id.) It was also noted that Plaintiff had a cerum protein of 4.9 which was low (normal being 6.0 - 8.2). (Id.) As of May 21, 2004, medical records indicate that since Plaintiff has been on hemodialysis he has a cholesterol level of 157 and a triglyceride level of 143. (Id.) Plaintiff's HDL cholesterol level is 51, and his LDL cholesterol is 77. (Id.) All of these values are within a normal range, and also indicate that Plaintiff's hyperlipidemia are under control with his current medical treatment and hemodialysis. (Id.)

On August 7, 1997, Plaintiff was hospitalized for end stage renal disease.[8]

---

[8] Between November 24, 1995, and August 7, 1997, Plaintiff was examined by an outside Nephrologist on two other occasions in connection with his condition.

(**Document 2**, ¶ 9. See **Document B**.) During this hospitalization, Plaintiff began hemodialysis. (**Document 2**, ¶ 9.) The community physician referred Plaintiff to hemodialysis three times a week. (Id.) At no time during hospitalization or discharge was a renal transplant recommended. (Id.) Plaintiff received regular evaluations of his medical condition. (Id. at ¶ 10.) His dialysis treatments occurred at regular intervals and were considered successful for end stage renal disease. (Id.)

On January 7, 2000, Plaintiff underwent an evaluation of his candidacy for renal transplantation. (Id. at 11.) Todd K. Howard, M.D., Associate Professor of Surgery at the Washington University School of Medicine, Barnes-Jewish Hospital, performed the evaluation. (**Document 2**, ¶ 11.) According to Dr. Todd K. Howard, Plaintiff "appears to be a reasonable candidate for renal transplant." (Id.) However, he added that Plaintiff would require a full evaluation of his Hepatitis B and Hepatitis C, as there may be underlying liver disease or ongoing viral Hepatitis which may impact his ability to receive transplant and immunosuppressive medication afterwards. (Id.) He also stated that it would be reasonable for Plaintiff to "undergo a full psychological evaluation" to ensure that he will comply with medical management to maintain his allograft particularly upon release from prison. (Id.) Only assuming the satisfaction of these prerequisites did Dr. Todd K. Howard assert that Plaintiff was a "reasonable candidate for renal transplantation." (Id.)

On January 24, 2003, Plaintiff was transferred from USMCFP Springfield to FMC Devens for continuation of his dialysis. (See **Document 2**, ¶ 15.) One of the principal reasons for referral to FMC Devens, was Plaintiff's characterization as "a long term dialysis separatee." (Id.) Plaintiff's assertion that the transfer was for the sole purpose of receiving a kidney

6

transplant is unfounded. (Id.)

As of today's date, Plaintiff is in stable condition, and his hemodialysis site is functioning adequately. (See **Document 2**, ¶ 16.) Plaintiff continues to receive hemodialysis three times per week and is seen regularly by a Nephrologist. (Id.) Plaintiff's fistula, which provides for vascular access for hemodialysis, is functioning normally and there is no immediate danger of losing that access. (Id. at 17.) Plaintiff has neither been approved nor denied a kidney transplant by the BOP and he remains a candidate for kidney transplantation while serving his federal sentence. (See **Document 2**, ¶ 24.)

### Statutory and Regulatory Framework

#### The Federal Tort Claims Act and Medical Malpractice

Under the Federal Tort Claims Act ("FTCA") and subject to its exceptions, the United States is liable in the same manner and to the same extent as a private individual in like circumstances. 28 U.S.C. § 2674. Therefore, pursuant to the FTCA, the substantive medical malpractice law of the Commonwealth of Massachusetts applies to this case. 28 U.S.C. §§ 1346(b)(1) and 2674. In order to sustain a cause of action for medical malpractice under Massachusetts law, a plaintiff must prove negligence by establishing: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty; and, (3) that the defendant's breach was the proximate cause of the plaintiff's injury. See Poyser v. United States, 602 F.Supp. 436, 438 (D. Mass. 1984); Rosario v. United States, 824 F. Supp. 268, 287 (D. Mass. 1993); Mitchell v. United States, 141 F.3d 8, 13 (1st Cir. 1998). The applicable standard of care, under Massachusetts tort law, is that of the average practitioner of the medical specialty in question. Mitchell, 141 F.3d at 13. Generally, to meet the burden of proof on issues

of negligence and causation, the plaintiff must enlist the assistance of expert testimony. Mitchell, 141 F.3d at 13.

### The Bureau of Prisons' Organ Transplant Policy

The Bureau of Prisons Program Statement 6000.05, Health Services Manual, Chapter VI, § 21, allows BOP clinical directors, to consider organ transplantation as a treatment option for inmates under certain prescribed conditions. Pursuant to this Program Statement, "[o]nce a specialist determines that an inmate may be a potential candidate for organ transplantation, and the Clinical Director recommends that further evaluation is medically appropriate, the inmate will be evaluated at an appropriate facility such as a transplant center . . . ." (Id. at § 21(a).) If an organ transplant center considers an inmate suitable for a transplant, the institution's Clinical Director will then refer all pertinent documentation to the Medical Director of the Federal BOP at Central Office for consideration. (Id. at § 21(b).) "If the Medical Director determines that organ transplantation is medically indicated, the inmate will be referred to an appropriate transplant center in accordance with BOP policy, transplant regulations, and state and federal laws."[9] (Id. at § 21(c).) This BOP Program Statement *does not mandate* transplants. (See **Document 4**, Declaration of Michael B. Nelson, D.O., Chief of Health Programs, BOP Health Services Division, ¶ 3.) Rather, it states: "The Bureau will *consider* organ transplantation as a treatment *option* for inmates . . . ." (Bureau Of Prisons Program Statement 6000.05, Health Services Manual, Chapter VI, ¶ 21 (Emphasis supplied.))

---

[9] "Prior to transplant center referral, the Medical Director must first obtain the concurrence of the Assistant Director, Correction Programs Division, to ensure that all security issues or correctional interests regarding referral of the inmate have been satisfied." Bureau of Prisons Program Statement 6000.05, Health Services Manual, Chapter VI, § 21(c).

8

## Argument

Summary judgment is proper where, "the pleadings . . . together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323. The moving party will satisfy its burden by "point[ing] to the absences of adequate evidence supporting the nonmoving party's case," Carroll v. Xerox Corp., 294 F.3d 231, 236 (1st Cir. 2002), on "every relevant issue." Currie v. Group Insurance Commission, 290 F.3d 1, 24 (1st Cir. 2002). In the instant case, as Plaintiff lacks adequate evidence to support either his complaint or his motion for partial summary judgment, this court should deny Plaintiff's partial summary judgment motion, and grant summary judgment in favor of the United States pursuant to Fed. R. Civ. P. 56(c).

## I. SUMMARY JUDGMENT IS PROPER AS PLAINTIFF LACKS ANY ADEQUATE EVIDENCE SUPPORTING HIS CLAIM AGAINST THE UNITED STATES.

Plaintiff's claims of negligent medical treatment by the United States are wholly unsupported. First, Plaintiff lacks any evidence to support the allegations that the treatment he received for his end stage renal failure was below the standard of care imposed by Massachusetts law. Second, Plaintiff lacks any evidence to establish a causal link between the allegedly deficient treatment and any alleged resulting injury. Therefore, as there is a dearth of evidence supporting Plaintiff's claims, summary judgment should be granted in favor of the United States.

### A. Plaintiff Lacks Evidence To Support His Claim That The United States Breached The Duty of Care.

In the instant case, Plaintiff alleges that the United States violated the BOP organ transplant policy by failing to provide a kidney transplant and therefore breached the duty of care. (See Complaint ¶ 2.) The BOP organ transplant policy to which the Plaintiff refers, Bureau Of Prisons Program Statement 6000.05, Health Services Manual, Chapter VI, ¶ 21, *permits but does not mandate* organ transplantation. The United States has not violated that policy. On the contrary, the United States provided, and continues to provide, Plaintiff with adequate and appropriate medical care thereby meeting the standard of care required under Massachusetts law.

Under Massachusetts law, a physician is held to the standard of care of the average practitioner of the medical specialty in question. Mitchell, 141 F.3d at 13. In this case, The United States has not breached the duty of care. Plaintiff receives hemodialysis three times per week, and is seen regularly by a consultant independent contractor Nephrologist. (See **Document 2, ¶¶ 10, 16.**) Consultation reports are prepared for monthly reviews of Plaintiff's hemodialysis treatments. (Id. at ¶ 16.) Plaintiff continues to receive monthly laboratory tests and his medications are adjusted according to their findings. (Id.) Plaintiff's medical record indicates that while at FMC Devens[10] he suffered no significant complications as a result of hemodialysis. (See **Document 2, ¶ 23.** See also **Exhibit B.**) In fact, plaintiff's condition *improved* following the commencement of hemodialysis. (See **Document 2, ¶ 23.**) All of these facts indicate both that Plaintiff received adequate and appropriate medical treatment during the

---

[10] The medical record also covers his treatment at USMCFP Springfield. Plaintiff was transferred to FMC Devens on January 24, 2003. As a result, any entry in his medical record prior to January 24, 2003 can be attributed to USMCFP Springfield and should be considered for background purposes only.

10

time period in question, and that the United States met the necessary standard of care.

Additionally, as a result of the Plaintiff's improvement and stability while on hemodialysis, Plaintiff is not an emergent candidate for a kidney transplant. In order to be considered an emergent transplant candidate, Plaintiff must meet certain criteria. The following criteria were established to prioritize evaluations for a possible kidney transplant, in the context of the management of other inmates with significant medical needs. (See **Document 4, ¶ 7.**) The approach assists in identifying the inmates on dialysis who are the most ill. (Id.)

First, Plaintiff must have extremely limited vascular access through which to continue dialysis. (Id.) Plaintiff's medical records indicate that his vascular access sites are acceptable. (See **Document 2, ¶ 23.**) Second, Plaintiff's condition would need to consistently deteriorate despite dialysis. (**Document 4, ¶ 7.**) On the contrary, Plaintiff's condition has improved as a result of dialysis such that he is considered to be in stable condition. (See **Document 2, ¶ 23.**) Plaintiff does not meet either of these criteria, yet over the past three years he has undergone a stepwise evaluation toward the possibility of transplantation. (**Document 4, ¶ 7.**) According to the Clinical Director at FMC Devens, an emergent kidney transplant is *not* medically necessary for Plaintiff's present medical condition as long as his hemodialysis access site remains in good condition, and he remains in stable condition. (See **Document 2, ¶ 23.**)

However, even if Plaintiff were to meet the criteria to be considered an emergent kidney transplant candidate, he would still need to overcome other criteria. For example, once considered a priority, he would need a complete work up of his Hepatitis B and Hepatitis C to ensure his ability to receive a transplant and the required medication following the transplant surgery. (See **Document 2, ¶ 11.**) Additionally, it was recommended that Plaintiff undergo a

11

full psychological evaluation to ensure compliance with medical management following a transplant. (Id.) Plaintiff's medical records indicate that he may not meet these requirements either.[11] (Id.)

Accordingly, all of the information, taken together, indicates that the United States met the duty of care required under Massachusetts law.

### B. Plaintiff Lacks Evidence of a Causal Connection Between Allegedly Deficient Treatment and Alleged Injury.

Assuming, arguendo, that Plaintiff could establish the United States' breach of the duty of care, he would still be unable to establish that the breach was a proximate cause of some injury. Plaintiff asserts that his alleged injury is irreparable harm suffered by him as a result of the United States' failure to approve his kidney transplant request. (Complaint, ¶ 2.) Plaintiff claims that as a consequence of the United States' failure to provide a kidney transplant, he is prevented from removing toxins from his body. (Id. at ¶ 26.) Further, Plaintiff claims that continued hemodialysis is causing expanded injury to all of his organs, in addition to adversely affecting his nervous system. (Id.)

First, it is important to note that Plaintiff **remains** a candidate for kidney transplantation while serving his federal sentence. (**Document 2**, ¶ 24.) The United States has neither granted, nor denied, his request. He continues to be under consideration for kidney transplantation.

---

[11] For example, in November 2001, Plaintiff refused to meet with the Nephrologist for a consultation review. (See **Document 2**, ¶ 10 n.1.) In fact, Plaintiff has refused Nephrology consultations, complete dialysis treatment, and other medical tests while at USMCFP Springfield. (Id. at ¶ 12 n.2.) On November 7, 2001, Plaintiff was evaluated by a certified Neuropsychologist at USMCFP Springfield, at which time Plaintiff refused to complete the psychological evaluation and testing. (Id. ¶ 11.) The Neuropsychologist concluded that "this behavior would raise some concern about his appropriateness for transplantation because of issues regarding follow-through." (Id.)

Second, Plaintiff lacks any evidence of injury as a result of the United States' present failure to grant him a kidney transplant. In fact, Plaintiff's medical records indicate that he *responded well* to hemodialysis and that his medical condition *has improved* subsequent to the commencement of hemodialysis treatments. (Id. at ¶ 23.) Though he alleges that he is currently unable to remove toxins from his body, his records indicate that hemodialysis is cleaning his blood *excellently*.[12] (Id.) As previously noted, Plaintiff's HDL and LDL cholesterol levels improved and he is in stable condition, with acceptable vascular access sites. (Id.) Plaintiff could continue for several more years without a kidney transplant. (Id.) Therefore, an emergent kidney transplant is not medically indicated or necessary as he is not suffering the alleged daily irreparable harm. (Id.)

Third, as there is no evidence of injury, there can be no evidence of a causal connection between the United States' actions and any alleged injury by Plaintiff. A plaintiff in a medical malpractice action must establish a causal connection between defendant's alleged negligence and ensuing injury. Rosario, 824 F. Supp. at 287.

In the absence of adequate evidence, Plaintiff is unable to establish: breach of the duty of care on the part of the United States; injury to Plaintiff; or that any injury resulted from any alleged negligence of the part of the United States. As a result, Plaintiff is unable to establish the existence of elements essential to his medical malpractice cause of action under the FTCA. Therefore, in the absence of adequate evidence to the contrary, there is no FTCA violation.

---

[12] As part of Plaintiff's monthly evaluation, a urea reduction ration (URR) is determined. The URR represents the percentage of blood being cleaned with dialysis. A value above 65 is considered excellent. Plaintiff's medical records indicate that in September 1997, when hemodialysis treatments began, his URR was 64%. As of May 7, 2004 his URR was 69.39%.

Accordingly, Plaintiff's motion for partial summary judgment should be denied and the Court should enter summary judgment in favor of the United States as a matter of law.[13]

## Conclusion

For the foregoing reasons, the United States respectfully requests that this Court <u>deny</u> Plaintiff's motion for partial summary judgment, and <u>allow</u> its motion for summary judgment in its entirety pursuant to Fed. R. Civ. P. 56(c).

Respectfully submitted,

Defendant, United States of America,
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

---

[13] While Plaintiff does not expressly allege a violation of the Eighth Amendment or other constitutional violations, to the extent that his complaint and motion for partial summary judgment are merely constitutional claims in disguise, the United States asserts that any such claims would also fail. Plaintiff has received, and continues to receive, appropriate medical treatment at FMC Devens. Moreover, "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir.1985), quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To establish "deliberate indifference," the plaintiff must demonstrate through credible evidence that the responsible prison official's conduct constituted 'an unnecessary and wanton infliction of pain' or were 'repugnant to the conscience of mankind.'" <u>Dias v. Vose</u>, 865 F.Supp. 53, 56 (D. Mass. 1994) (citations omitted). Disagreement as to appropriate choice of medical treatment for prisoner does not give rise to constitutional violation because a right under the Eighth Amendment "to be free from cruel and unusual punishment does not include the right to treatment of one's choice." <u>Id</u>. at 57 (<u>quoting</u> <u>Layne v. Vinzant</u>, 657 F. 2d 468, 473 (1st Cir. 1981). Moreover, although inmates deserve adequate medical care, they are not entitled to insist that they be provided with the most sophisticated care that money can buy. <u>United States v. DeCologero</u>, 821 F.2d 39, 41 (1st Cir. 1987).

By:  *Gina Y. Walcott-Torres* (signature)
Gina Y. Walcott-Torres
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3369

Dated: June 16, 2004

## CERTIFICATE OF SERVICE

This is to certify that I have this 16th day of June 2004, served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

Kenneth Eugene Barron (Prison #30255-037), *pro se*, FMC Devens, P.O. Box 879, Ayer, MA 01432

*Gina Y. Walcott-Torres* (signature)
Gina Y. Walcott-Torres
Assistant United States Attorney

## REQUEST FOR WAIVER OF LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel hereby requests a waiver of the requirements of Local Rule 7.1(A)(2). As reasons therefore, she asserts that the plaintiff, who is acting *pro se*, is incarcerated at the Federal Medical Center in Devens, Massachusetts.

*Gina Y. Walcott-Torres* (signature)
Gina Y. Walcott-Torres
Assistant United States Attorney